**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 25-2177**

───────────

MICHAEL DRIGGS; THOMAS MICHAEL LOGAN; DAVID LOGAN; MEGAN
MARX; TERRI MUMLEY; JOHN ZIMMERLEE; CAROL HRDLICKA;
GEORGE PATTERSON; POW INVESTIGATIVE PROJECT, INC.,

       Plaintiffs – Appellants,

    v.

CENTRAL INTELLIGENCE AGENCY,

       Defendant – Appellee.

───────────

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria.  David J. Novak, District Judge.  (1:23−cv−01124−DJN−JFA)

───────────

Argued:  May 5, 2026                        Decided:  August 4, 2026

───────────

Before DIAZ, Chief Judge, and HARRIS and BENJAMIN, Circuit Judges.

───────────

Affirmed by published opinion.  Chief Judge Diaz wrote the opinion, in which Judge Harris
and Judge Benjamin joined.

───────────

**ARGUED:** John Harrison Clarke, LAW OFFICE OF JOHN H. CLARKE, Washington,
D.C., for Appellants.  Matthew James Mezger, OFFICE OF THE UNITED STATES
ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Todd W. Blanche, Deputy
Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.;
Lindsey Halligan, United States Attorney, Dennis C. Barghaan, Jr., Assistant United States
Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for

Appellee.

_____

DIAZ, Chief Judge:

This case arises from a Freedom of Information Act (FOIA) request for Central Intelligence Agency documents. When Congress passed FOIA and later the CIA Information Act, it authorized exemptions from FOIA's disclosure requirements to shield certain national security and intelligence information. Because those exemptions apply here, we affirm.

## I.

### A.

Michael Driggs and other plaintiffs requested under FOIA that the CIA produce several documents about American prisoners of war and U.S. government efforts to recover them. One document Driggs sought was the "*Review of the 1998 National Intelligence Estimate on [Prisoner of War and Missing in Action] Issues and the Charges Levied by A Critical Assessment of the Estimate*" ("Joint Report"). Joint Appendix (J.A. 35). The CIA and U.S. Department of Defense drafted the Joint Report in response to then-U.S. Senator Robert Smith's criticism of the agencies' National Intelligence Estimate about prisoners of war.

### B.

A month after the FOIA request and before the CIA responded, Driggs sued the agency, seeking disclosure of the requested records. He then filed a memorandum asserting

3

that the CIA had an obligation to search its most sensitive operational files for the records.[1] The district court construed it as a motion to compel and denied it. *Driggs et al. v. CIA*, No. 1:23-cv-01124, 2024 WL 2303842, at *4 (E.D. Va. May 21, 2024).

In response to Driggs's FOIA request, the CIA identified 130 documents without searching its operational files. It "released 35 documents in full, 85 documents in part (including the Joint Report), and withheld 10 documents (totaling 39 pages) in full." J.A. 172. The CIA also filed an affidavit from Mary Williams, a government classification authority, attesting to the legal basis for the CIA's limited production.

The parties conferred and narrowed the dispute to two issues: 1) the adequacy of the CIA's search that didn't include its operational files, and 2) redactions to the Joint Report.

The CIA then moved for summary judgment on both issues. Driggs cross-moved for summary judgment to compel disclosure of the Joint Report's redacted information and for in camera inspection of that information.[2] The court granted the CIA's motion and denied Driggs's motions.[3]

This appeal followed.

---

[1] In broad strokes, operational files are those documenting the CIA's conduct of foreign intelligence or counterintelligence operations. 50 U.S.C. § 3141(b).

[2] Driggs also sought to compel disclosure of information redacted from another document, but the district court concluded that he waived that challenge because he attested in a joint status report that the document was no longer at issue. Driggs doesn't challenge that decision on appeal.

[3] The district court also determined that collateral estoppel barred four plaintiffs (Robert Moore, Jana Orear, Christianne O'Malley, and Mark Sauter) from suing. There was no appeal of that decision, so we accordingly remove them from the case caption.

4

II.

A.

We first review de novo the district court's denial of Driggs's motion to compel the CIA to search its operational files. *See Accuracy in Media v. CIA*, 134 F.4th 1236, 1240 (D.C. Cir. 2025).

"[T]o reduce the expenditure of time and money on fruitless search and review of sensitive operational [files]," *id*. at 1238–39 (citation modified), Congress passed the CIA Information Act, giving the CIA Director discretion to exempt those files from disclosure under FOIA. 50 U.S.C. § 3141(a). But the Act still permits courts to compel the CIA to search the files under narrow circumstances. *Id*. § 3141(f). A court must order a search if it determines that the CIA "improperly withheld" the requested records because of "improper placement solely in exempted operational files," *id*. § 3141(f)(3), or "improper exemption of operational files." *Id*. §§ 3141(f)(4)(A), (f)(6).

The improper placement provision applies when a party "argues that if the records requested were properly filed where they should be filed, they would be outside exempted operational files and would therefore be subject to [FOIA's] search, review and disclosure requirements." H.R. Rep. No. 98-726(I) at 34. In contrast, the improper exemption provision applies when a party argues that "the files themselves have been improperly designated as 'operational' files, and thus, inappropriately exempted." *Jud. Watch, Inc. v. CIA*, 310 F. Supp. 3d 34, 41 (D.D.C. 2018).

5

The party seeking documents must support a claim of improper withholding under either provision "with a sworn written submission, based upon personal knowledge or otherwise admissible evidence." 50 U.S.C. §§ 3141(f)(3), (4)(B).

B.

The district court was right to deny Driggs's motion to compel a search of the CIA's operational files. A court may compel a search only *after* the "Agency has improperly withheld requested records," but here the CIA was still conducting its search and producing responsive documents. *Id.* § 3141(f)(6); *Driggs*, 1:23-cv-01124, ECF No. 19 (motion filed on March 22, 2024); J.A. 166 (showing document productions between March 1, 2024 and January 10, 2025). With production ongoing, Driggs categorically could not have met his burden to show that the CIA improperly withheld responsive records.

Nor did Driggs offer evidence to support a claim under 50 U.S.C. § 3141(f)(3) that the documents shouldn't have been placed in operational files. The two affidavits[4] that Driggs attached attest that the CIA overclassifies documents generally. That's not enough to meet Driggs's burden.

Driggs contends that the district court's decision is inconsistent with that of another "court [that] ordered the CIA to search its operational files, based on" an affidavit from

---

[4] Senator Smith attested that he "personally [has] seen hundreds of classified documents that could and should be released as they pose no national security risk," J.A. 20 ¶ 28, and former CIA official Kevin Shipp stated that "[d]ocuments relating to the fate of [prisoners of war], including those transferred to Russia or China, can clearly be released, at least in part, without revealing the identity of any confidential source." J.A. 20 ¶ 29.

6

Senator Smith. Appellants' Br. at 35 (citing *Hall v. CIA*, No. 04-814, 2019 WL 13160061, at *2 (D.D.C. Aug. 2, 2019)). But that unpublished out-of-circuit district court opinion involved an "improper exemption of operational files" allegation under 50 U.S.C. § 3141(f)(4)(A), not an "improper placement" allegation under § 3141(f)(3).

The *Hall* court concluded that the Senator's attestation that the documents "pose no national security risk" supported the plaintiff's allegation that the CIA improperly designated the records as operational. *Hall*, 2019 WL 13160061, at *2. But that determination doesn't support Driggs's distinct allegation that the CIA erroneously placed the records in its operational files.[5]

## III.

We next review de novo whether the CIA's affidavit supports its redactions to the Joint Report. *Empower Oversight Whistleblowers & Rsch. v. Nat'l Insts. of Health*, 122 F.4th 92, 99 (4th Cir. 2024).

## A.

"FOIA provides that when any person makes a sufficiently specific and reasonable request for records from a government agency, the agency shall make the records promptly

---

[5] Driggs also argues that the CIA "should be required" on remand to "recite whether it conducted a decennial review" of its operational records and whether the records are subject to automatic declassification after 25 years. Appellants' Br. at 39–40. Because he never presented those issues to the district court, we won't consider them. *See Mountain Valley Pipeline, LLC v. 8.37 Acres of Land by Terry*, 101 F.4th 350, 360 (4th Cir. 2024) ("Absent exceptional circumstances, parties may not raise new arguments on appeal that were not first presented to the district court.").

7

available." *Zaid v. Dep't of Just.*, 96 F.4th 697, 703 (4th Cir. 2024) (citation modified). But FOIA includes several exemptions "to safeguard various public interests against the harms that would arise from overbroad disclosure." *Id.* at 704 (citation modified).

"[T]he government bears the burden of proving requested materials are exempt from disclosure," *id.* at 703, which it can meet "by describing the withheld material with reasonable specificity and explaining how it falls under one of the enumerated exemptions." *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 290 (4th Cir. 2004). A court may "enter summary judgment on the basis of agency affidavits" attesting that an exemption applies if the affidavit is "relatively detailed" and "submitted in good faith." *Simmons v. U.S. Dep't of Just.*, 796 F.2d 709, 712 (4th Cir. 1986) (citation modified). When there is "no reason to question the good faith of the agency," then a court is "entitled to accept the credibility of the affidavits." *Zaid*, 96 F.4th at 705 (citation modified).

B.

Two FOIA exemptions independently support the CIA's redactions to the Joint Report.

1.

The first exemption permits an agency to withhold information that is "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy." 5 U.S.C. § 552(b)(1)(A). The CIA's affidavit relies on Executive Order 13526 §§ 1.4(c), (d), which protects from disclosure information about "intelligence activities (including covert action), intelligence sources or methods" and "foreign relations or foreign activities of the United States." J.A. 173.

8

The CIA's affidavit reasonably describes how disclosing those three categories of information contained in the Joint Report's redacted portions would undermine the CIA's work and U.S. national security. The affidavit explains that divulgence "would allow intelligence targets to circumvent the CIA's collection efforts" because the Joint Report contains "certain priorities of specific U.S. intelligence targets, the locations of CIA activities, the targets of specific CIA operations and analysis, and Agency processes for handling intelligence information." J.A. 175. According to the affidavit, "disclosure would reveal intelligence priorities and the CIA's information-sharing relationships with specific foreign individuals and governments." J.A. 176.

That's all the law requires. Because the CIA described "the withheld material with reasonable specificity and explain[ed] how it falls under . . . the enumerated exemptions," it has met its burden. *Hanson*, 372 F.3d at 290.

## 2.

The CIA's affidavit invokes a second exemption to support the redactions. That exemption permits withholding information that is "specifically exempted from disclosure by statute . . . if that statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3)(A)(i). The CIA attests that two statutes, the National Security Act, 50 U.S.C. § 3024(i)(1), and the Central Intelligence Agency Act, 50 U.S.C. § 3507, forbid it from disclosing the redacted information.

The National Security Act provides that "[t]he Director of National Intelligence shall protect . . . intelligence sources and methods from unauthorized disclosure." 50

9

U.S.C. § 3024(h)(1).  The CIA's affidavit attests that "the redactions obfuscate specific types of intelligence methods" it uses, which is necessary "to prevent foreign adversaries, hostile actors, terrorist organizations, and others from learning the ways in which the CIA operates, which would allow them to take measures to hide their activities from the CIA or target Agency officers."  J.A. 175–76.

The CIA Act also exempts "publication or disclosure of the organization or functions of the [CIA], or of the names, official titles, salaries, or numbers of personnel employed by the Agency."  50 U.S.C. § 3507.  The affidavit states that the redactions were made to protect exempted personnel information.

On this ground alone, the district court properly granted summary judgment.

3.

Yet Driggs insists that the CIA can't rely on either exemption because its affidavit is "conclusory and lacking in the required specificity."  Appellants' Br. at 29–30.  But the law only requires that the CIA "fairly describe the content of the material withheld and adequately state its grounds for nondisclosure."  *Spannaus v. U.S. Dep't of Just.*, 813 F.2d 1285, 1289 (4th Cir. 1987) (citation modified).  Requiring more would risk disclosure of the very information the CIA seeks to protect.

Driggs also argues that the CIA doesn't "explain how, if at all, the passage of time figures into its position."  Appellants' Br. at 29.  But FOIA doesn't limit application of its exemptions to any specific period.  *See* 5 U.S.C. §§ 552(b)(1), (3); *Fitzgibbon v. CIA*, 911 F.2d 755, 763 (D.C. Cir. 1990) (rejecting "contention that the District Court was under an obligation to consider the effect of the passage of time on the documents in question").

10

Driggs next says disclosure is appropriate because a U.S. intelligence official told members of Congress that he didn't have reservations about the public release of the redacted information. But the musings of one official can't trump the position of the agency. "Congress [instead] chose to vest the Director of Central Intelligence with the broad discretion to safeguard the Agency's sources and methods of operations." *CIA v. Sims*, 471 U.S. 159, 174–75 (1985).

## C.

Unable to show any defect in the CIA's affidavit, Driggs switches gears. Relying on out-of-circuit authority, he insists that we can't accept the affidavit's credibility because the CIA acted in bad faith when it drafted the National Intelligence Estimate on prisoner of war issues. To support that contention, Driggs cites *Rugiero v. U.S. Dep't of Just.*, 257 F.3d 534, 544 (6th Cir. 2001).

There, the Sixth Circuit held that courts may assess an agency's conduct outside of a FOIA action to determine whether it acted in bad faith and thus isn't entitled to a presumption of credibility in the FOIA matter. *Id.* at 544 (holding that "[e]vidence of bad faith on the part of the agency can overcome this presumption [of credibility], even when the bad faith concerns the underlying activities that generated the FOIA request rather than the agency's conduct in the FOIA action itself"). But another circuit disagrees. *See Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) ("[T]he sufficiency of the affidavits is not undermined . . . by past agency misconduct in other unrelated cases.").

11

We haven't endorsed either approach. And even assuming it's proper to assess an agency's conduct outside of the present FOIA context, Driggs hasn't met the "very high standard" to trigger review of past agency action. *Rugiero*, 257 F.3d at 547. The Sixth Circuit instructed courts to do so only in extreme cases, such as when an agency engaged in "well-documented infringements of civil liberties whose disclosure threatened public embarrassment of the [agency]." *Id.* at 546 (citing *Jones v. FBI*, 41 F.3d 238, 242–43 (6th Cir. 1994)).

Driggs doesn't make that showing here. He argues there is evidence suggesting the CIA's Estimate was "extremely inaccurate, misleading, speculative and unsupported." Appellants' Br. at 9 (quoting J.A. 257). But even if that were so, a disagreement about the rigor and merits of the CIA's work is not enough to show agency bad faith.[6]

On these facts, we accept the credibility of the CIA's affidavit. So the district court didn't err in granting summary judgment to the CIA.

*AFFIRMED*

---

[6] Absent bad faith, the district court didn't abuse its discretion in declining to review the redactions to the Joint Report in camera.

12